

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Campbell K. Ford
County Attorney
San Saba County
San Saba, Texas

Dear Sir:

Opinion No. 0-4885
Re: Under the given facts can
the Tax Assessor-Collector
of San Saba County collect
the increased tax, raising
the valuation of all real
estate, 5%?

  You submit for the opinion of this department cer-
tain questions as to the legality of a proposed method of
assessment of property in San Saba County, which are re-
flected in your request and your opinion to the Commissioners'
Court of San Saba County. We copy both as follows:

  "The Commissioner's Court of this County
have requested that I submit the following ques-
tions to you for your opinion:

  "1. a. The Commissioner's Court ordered
the Tax Assessor to raise the valuation of all
real estate in this County 5% in the assessments.
The Tax Assessor complied to the order and
raised the valuation of all real estate 5%. No
formal notice of the raising of valuation was
given the property owners. The Board of Equali-
zation met without giving notice to the proper-
ty owners of the raising of valuation. Can the
Tax Assessor and Collector collect the increased
tax? If not, can he collect the tax as it was
valued for 1942?

  "b. The Commissioner's Court in 1932, by
the same methods, ordered the valuation of all
real estate out 10%. This was done, and the pro-
perty decreased in valuation by 10% in the assess-
ments by the Tax Assessor. There were no objections

by the property owners. The property has been rendered since that time at the value placed after the 10% cut. Since the 10% cut was illegal, can the Commissioner's Court now have the property assessed at the value placed on it prior to the time of the 10% decrease?

"My opinion to the Commissioner's Court is attached hereto.

"2. In May, 1938, the Commissioner's Court ordered an election for the purposes of voting on a bond issue on the entire county for the purpose of the Construction, maintenance and operation of roads in San Saba County, naming in said order some specific roads and bridges among which was a bridge over the Colorado River in the Northwest Community of the County. The election was valid and passed. Bonds were issued and sold for the purposes stated in the order for election and ballots. Since the election, the contingents upon which the bridge mentioned in the order for election was to have been built have not been met and the bridge will not be built. Does the Commissioner's Court or the Commissioner for that precinct have the authority to use said money for improvement, building, etc., of other roads in that precinct, or must the money be used for paying off the bonds issued for that purpose?

My opinion to the Commissioner's Court is attached hereto."

"TO THE HONORABLE COMMISSIONER'S COURT OF
SAN SABA COUNTY, TEXAS:

"QUESTION: May the Commissioner's Court order the Tax Assessor to make a blanket raise of the valuation of all real estate in this County by 5% in the assessments and collect said increase without giving the owners of the real estate formal notice?

"The opinion of this office is that the Commissioner's Court has no authority to authorize such a blanket raise in the valuation of the real estate. As a matter of policy the Commissioner's Court may ask that the Tax Assessor value all real estate at 5% more than it has been valued in prior years if he finds that the property has a greater market value than the value placed on it by the assessments of prior years. Article 7185, Vernon's Annotated Civil Statutes, 1925. The Tax Assessor may so value property, give notice to the owner of the property, and refer him to the Board of Equalization. Or the Commissioner's Court sitting as a Board of Equalization may raise the value on real estate if they find that the property is not rendered at its fair market value by giving the owner notice through the County Clerk of the raise. Article 7206, Vernon's Ann. Civil Statutes, 1925.

"This office believes that the blanket raise of valuation of all real estate would endanger the collection of any tax upon the property.

"QUESTION: Can the 10% cut given in the valuation of real estate in 1932 be replaced by an order of the Commissioner's Court since said cut was not done as authorized by the statutes of the State of Texas.

"This office believes that although the cut in 1932 was not properly authorized, the fact that the property was in 1933 and every year since that time assessed at the value of 1932, and in some cases raised or lovered, does not permit the Commissioner's Court to rescind the order giving the cut or to just replace the value of 1932. This office believes that the renditions made in 1933 and subsequent years have estopped the commissioner's court from raising the valuation by rescinding said order, and that the valuation can

only be raised according to statutes at this time."

"TO THE HONORABLE COMMISSIONER'S COURT OF SAN SABA COUNTY, TEXAS:

"QUESTION: May the Commissioner of Precinct No. 2 use the money raised by selling of bond issue for the purpose of building a bridge across the Colorado River at Northwest for the building and improvements of roads in that precinct when the bond issue was voted upon and the bridge over the Colorado River was specified as a part of the use of the bond issue in the order of election, notice of election, election ballots, and the returns of the election?

"The opinion of this office is that where as in this case the order of election on the bond issue, notice of election, election ballots distinctly stated that $10,000.00 of the bond issue was to be used for the purpose of building a bridge across the Colorado River in Northwest Community, the money must be used for that purpose and for no other purpose. The fact that the order for election, etc., distinctly stated that this amount of the proceeds of the sale of the bonds was to be used for this purpose made a contract between the electorate and the Commissioner's Court (Wright v. Allen, Civ. App., 257 SW 980). Therefore this money must be used to erect a bridge or refunded into the treasury to pay off that many of the bonds."

We are of the opinion that you have substantially stated the law in your opinion to the Commissioners' Court of your county upon the material questions involved. We shall, however, state our reasons in support of this conclusion.

Without covering the matters in detail, they are briefly as follows:

The property owner is accorded the right, and it is primarily his duty, to render his property for taxation (Art. 7189, V.R.C.S.); according to the reasonable cash market value at the time of such rendition; if the Assessor is satisfied that the value is below the cash market value, he shall place on said rendition opposite each piece of property the reasonable cash market value, if no market value, the real or intrinsic value, of such property at the time of such rendition; if the owner is not satisfied with the values thus proposed by the Assessor, the owner may have attached to his rendition a sworn statement by him, supporting his rendition, to be referred with his rendition to the Commissioners' Court (Board of Equalization) and the court shall hear evidence and determine the true value as of January 1, and in fixing the value the Assessor or the court shall take into account what said property could have been sold for any time within six months next before the first day of January (Art. 7211, V.A. C.S.). Article 7212 V.A.C.S. defines more definitely the procedure to be followed by the Board of Equalization in carrying out the purposes of the preceding Article 7211. We think these articles of the statute, construing them together, deal with renditions made by the owner of which he at all times has notice and an opportunity to be heard. By the express terms of Article 7212 V.A.C.S. such determination as to value by the Board of Equalization is final.

It is further provided under certain conditions mentioned in Articles 7192-7193 V.A.C.S., namely when the property owner has refused or neglected to render his property or to take the oath prescribed in Article 7188, the Assessor shall fix the value and make the assessment.

This brings us to the duties of the Commissioners' Court as a Board of Equalization provided for in Article 7206 V.A.C.S. The pertinent sections we quote as follows:

"1. They shall cause the assessor to bring before them at such meeting all said assessment lists, books, etc., for inspection, and see that every person has rendered his property at a fair

Honorable Campbell K. Ford, Page 6

market value, and shall have power to send for persons, books and papers, swear and qualify persons, to ascertain the value of such property, and to lower or raise the value on the same.

"2. They shall have power to correct errors in assessments.

" . . . . .

"4. After they have inspected and equalized as nearly as possible, they shall approve said lists or books and return same to the assessors for making up the general rolls, when said board shall meet again and approve the same if same be found correct.

"5. Whenever said board shall find it their duty to raise the assessment of any person's property, they shall order the county clerk to give the person who rendered the same written notice that they desire to raise the value of same. They shall cause the county clerk to give ten days written notice before their meeting by publication in some newspaper, but, if none is published in the county, then by posting a written or printed notice in each justice's precinct, one of which must be at the court house door."

Since your question deals only with the power to raise valuations, whether it be by the Assessor or the Board of Equalization, we come to answer your first question.

The Commissioners' Court as such, has no authority, as you correctly state, to instruct the Tax Assessor to assess all property 5% higher than rendered by a blanket increase of 5%, or at any other valuation. Indeed, there is no constitutional or statutory authority authorizing the Commissioners' Court to give any instructions to the Tax Assessor by blanket order or otherwise to raise or lower valuations.

Honorable Campbell K. Ford, Page 7

If the rendition fixed by the taxpayer, or by the Assessor, where, under the conditions prescribed by statute, the Assessor is authorized to fix the value and make the assessment, it is proposed by the Board of Equalization to raise the value of such rendition and assessment, it can only be done after due notice to the taxpayer or property owner as provided in Section 5 of Article 7206 noted above.

It is observed that by force of this statute the county clerk is required to give the person whose assessment of his property is sought to be raised by the Board of Equalization written notice of the intention of the Board in the premises. The manner of service of such notice is not provided and we think the law is that where no special method of service is specified, personal notice is contemplated. See 31 Texas Jurisprudence, p. 379, Sec. 12; Georgia Casualty Company v. McClure 239 S.W. 644, affirmed 251 S.W. 800. That notice be in writing emphasizes that such notice must be personal. Any method of personal notice, either by mail, service by the sheriff or constable, or by a private citizen, is in our opinion sufficient if it accomplishes the purpose of personal service.

It is said in the case of Hoefling vs. San Antonio 39 S.W. 918 by the Supreme Court as follows:

"This suit was brought by the city of San Antonio to recover of William Hoefling certain taxes assessed against him for the fiscal year ending February 28, 1891. He did not render his property for taxation for that year; but it was listed in his name as the owner by the city tax assessor, and was valued by that officer. The 'board of appeal and revision,' without giving him notice, increased the valuation of certain parcels of his real estate, but left that placed by the assessor upon other parcels,

as well as that put upon his personal proper-
ty, untouched. The city recovered a judgment
in the trial court for all the taxes claimed
by it; that is to say, it recovered upon the
basis of the increased valuation made by 'the
board of appeal and revision.' Upon appeal to
the court of civil appeals that judgment was
reformed, and a judgment was given for the
city for the taxes upon the property only which
had been valued by the assessor, and upon which
the valuation had not been increased by the
board. On appeal to the court of civil appeals
the contention of the city was that under the
charter of the city, when property was unren-
dered, whether the owner was known or not known,
it was the duty of the assessor to list it mere-
ly, and not to value it, and that the valuation
in the first instance was to be fixed by 'the
board of appeal and revision,' and that, there-
fore, the valuation of the assessor was without
effect, and the board had the power to value the
property without notice to the owner. The court
of civil appeals, however, held that, where pro-
perty in the city was not rendered, and the own-
er was known, it was the duty of the assessor,
not only to list it in the name of the owner,
but also to value it for taxation, and that the
board had no power to increase that value with-
out giving notice to the owner. We concur in
that opinion . . . . "

Notice to the taxpayer and his consequent right to
be heard is a necessary prerequisite to the jurisdiction of
the Board of Equalization under the general purpose of "due
process", but moreover is specifically required under the ex-
press terms of the statute. Highland Park Independent School
District of Dallas County, et al vs. Republic Insurance Com-
pany 80 S.W. (2d) 1053. It follows, therefore, that the blan-
ket order of the commissioners' court of San Saba County rais-
ing the valuations five per cent on all property without writ-
ten notice to each individual property owner, giving him an
opportunity to be heard is void and of no effect. Proper notice
not having been given, the Board was without power, jurisdiction,
raising the taxpayers valuations by the method proposed so as
to effect his liability for taxes.

If, however, the taxpayer acquiesces in an increase in the valuation of his property 5% or more and makes it his rendition he would be bound thereby and it would constitute a legal basis for the assessment and collection of his taxes, and this regardless of whether he had previous notice of the raise or not. But if the taxpayer does not adopt such raise in valuation as his rendition, notice and consequent right to be heard before the Board of Equalization is a necessary prerequisite for the Board of Equalization to raise his rendition. In such case if the required notice be not given, the rendition made by the taxpayer or by the assessor under the conditions authorizing him to fix the value and assess accordingly, would constitute the legal basis for the assessment and collection of his taxes. Hofheinz v. City of San Antonio, supra.

We deem it equally true from what we have said above that any order of the commissioners' court rescinding the blanket order of 1932 reducing the valuations of all real estate to ten per cent would be void and of no effect as a method of restoring the valuations as assessments for the present year of 1943. In other words the statute prescribes the method of fixing the value upon which taxes are to be assessed and collected and this method, in our opinion, would be as equally invalid as the first.

We now pass to your second question with respect to the authority of the commissioners' court to use bond money voted for the erection of a bridge for other improvements not specifically included in the purpose for which the bonds were voted. Your advice to the commissioners' court is correct and we do not deem it necessary to enlarge upon it and the authority cited by you, Wright vs. Allen 257 S.W. 980, supports your position.

We trust that the above answers your questions.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

D. P. Lollar
Assistant

LPL:ff

